UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:16-cv-385-FDW

| | |
|---|---|
| JIMMY ALLEN ROBERTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FRANK L. PERRY, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 1).[1] He is proceeding *in forma pauperis*. See (Doc. No. 7).

**I.    BACKGROUND**

*Pro se* Plaintiff Jimmy Allen Roberts, who currently resides at the Craggy Correctional Center in Asheville, has filed a 117-page civil rights Complaint pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against Secretary of Prisons Frank L. Perry, and the following employees of Mountain View C.I.: Superintendent of Programs Carol Buchannan, Mailroom Supervisor Lynn Ollis, Correction Officer Grear, and Administrator Mike Slagle.

Construing the Complaint liberally and accepting the allegations as true, Plaintiff alleges that, while he was incarcerated at the Mountain View C.I., he was thwarted from beginning a weekly Messianic Faith Group by Defendant Buchannan and her "underling" Chad Green, who is

---
[1] Plaintiff was granted leave to file an Amended Complaint but he declined to do so. (Doc. No. 12). As Plaintiff was advised by the Court, initial review with therefore go forward on the original Complaint. (Doc. No. 13).

not named as a defendant in the Complaint. On May 17, 2017, Plaintiff told Buchannan and Green that the requisite number of inmates wanted to enroll in the Messianic Faith Group to begin a weekly educational class pursuant the Educational Section of the Messianic Appendix currently recognized by NC DPS. (Doc. No. 1 at 5). Plaintiff proposed that Inmate James Keaton, who was approved to conduct previous Passover celebrations, would serve as the Faith Helper, and that a well-established source would donate a series of DVD seminars to the prison chapel for that purpose. Buchannan said that Inmate Keaton had changed his religious affiliation and could not serve as their Faith Helper, which Inmate Keaton later told Plaintiff was untrue. Buchannan further said that Raleigh officials had enacted "sweeping measures" prohibiting outside religious groups from donating religious DVDs to the prison to be used by their respective inmate faith group. All religious DVDs had to be preapproved and purchased by the prison and that these measures prohibited inmates from attending religious services for six months after their enrollment. (Doc. No. 1 at 6). These measures were not enacted in response to the furtherance of a compelling government interest and are not the least restrictive means of satisfying a minor penological interest; rather, it stems from the desire of prison officials to substantially burden Plaintiff's religious practice. (Doc. No. 1 at 7). Defendants are substantially burdening Plaintiff's free exercise by enacting irrational, arbitrary, overreaching restrictions designed to prevent him from getting educated on his ancestral religion that is unavailable in any format other than A/V seminars. This violates the First Amendment and RLUIPA because the Government cannot meet strict scrutiny standard and Defendants are not using the least restrictive means. (Doc. No. 1 at 8). Plaintiff filed a grievance regarding the matter on June 17, 2016.

On June 24, 2016, five religious books arrived for Plaintiff at Mountain View C.I. They were authored by and sent to Plaintiff by Pastor Everett Ramsey of Faith Baptist Church, and they

were published by James Nelson Publishers. On June 24, 2016, Defendant Ollis rejected the publications because they did not come from a legitimate publisher or marketer, and Plaintiff appealed. On June 26, 2016, Plaintiff sent Defendant Slagle a request form informing him of Ollis' actions. On July 15, 2016, Plaintiff sent a letter to Perry notifying him of Ollis' actions. (Doc. No. 1 at 18). On July 21, 2016, Plaintiff filed a grievance and received an unsatisfactory response. Defendant Ollie's rejection of the publications violates the First Amendment rights to free speech freedom of religion as well as RLIUPA. Reading religious literature is part of the way Plaintiff practices and expresses his religious beliefs. Taking the literature was responsible for making his exercise impracticable and is substantially burdening him, is an insurmountable impediment to his spiritual growth and development. The arbitrary rejection and procedural rubber-stamping was not in furtherance of a compelling governmental interest but instead was motivated by Defendant Ollis' personal desire to punish Plaintiff because of his race and religious beliefs in violation of Equal Protection. Plaintiff had been receiving Pastor Ramsey's publications at Mountain View C.I. until he was moved to the East Unit where Defendant Ollis processed the mail. The inside page of Ramsey's book entitled "Kingdom Parables" shows this fact as well as Plaintiff's claim of racial-religious discrimination agenda by "Mt. View C.I. Staff." (Doc. No. 1 at 21).

On August 15, 2016, Correctional Officer Grear confiscated Volume 2 of Lawrence Buchard's "The Covenant Heritage Series" from Inmate Eddie Money. (Doc. No.1 at 55). Plaintiff informed Defendant Grear that he had loaned the book to Inmate Money as authorized by DPS policy. However, Grear said the book was Aryan Brotherhood material and therefore contraband. Plaintiff contends the book is religious regarding his ancestral religious practice and does not contain any gang-related subject-matter. Confiscation was the sole product of Grear's hatred of Plaintiff because of his race and "ancestral religion" and tries to use the security policies to punish

Plaintiff. (Doc. No. 1 at 56). Plaintiff had received the book while at Avery C.I through proper mailroom screening three years before it was confiscated. It was inspected upon his arrival at Mountain View C.I., and he had it for over a year at Mountain View C.I. where it was inspected repeatedly without incident. Plaintiff was also allowed to receive Volumes 4 and 5 of the book prior to encountering Defendant Ollis. The book does not satisfy the criteria justifying confiscation. Plaintiff filed a grievance August 25, 2016, and received an unsatisfactory response. The grievance responses show that prison officials changed their strategy after investigating his claims, saying the confiscation was due to the fact Plaintiff loaned the book to Inmate Money. The confiscation was unlawful and was misdemeanor Larceny under North Carolina law. Plaintiff had received mailings for several years from Sommerville at different prisons without incident. (Doc. No. 1 at 70). The mailings were religious and/or political which shows violation of First Amendment freedom of speech. Defendant Ollis' actions violate the First Amendment by substantially burdening free exercise of his religion in violation of RLUIPA. (Doc. No. 1 at 71). Defendant Ollis also violated Due Process by failing to follow mandatory mail procedures. Plaintiff asks the court to judicially notice the fact that there are inmates at Mountain View C.I. who continually suffer abuses of Defendant Ollis, condoned by Defendants Perry and Slagle, and these abuses will continue without the court's intervention. (Doc. No. 1 at 72).

Plaintiff's incoming correspondences with Ed Sommerville suddenly stopped while Plaintiff was housed at Mountain View C.I., without notice. Plaintiff came to suspect that Defendant Ollis was responsible. On June 6, 2016, Plaintiff found out that Sommerville's correspondences had been returned to him by mailroom staff. On July 11, 2016, Plaintiff wrote to Ollis on a request form and asked her to explain why the religious and political articles had been returned without notice or due process procedures, which are mandatory. On July 13, 2016,

4

Defendant Ollis rubber stamped the request, saying the mailings had been returned due to absence of prisoner number in the address. This was deceptive because Sommerville's mailings had a computer generated address with Plaintiff's prisoner number. On July 12, 2016, Plaintiff wrote to Perry informing him of Ollis' abuses. (Doc. No. 1 at 74). On October 22, 2016, after Plaintiff was transferred to Craggy C.I., he received two letters from Sommerville informing another Mountain View C.I. inmate of his futile attempts to mail religious and political printouts to Plaintiff. (Doc. No. 1 at 75). Plaintiff filed another grievance on October 22, 2016.

Plaintiff seeks no money damages. (Doc. No. 1 at 113). He seeks the following "remedial" relief, and any other relief the Court deems appropriate:

(1) That this Court enter and order requiring:

(2) Defendants absorb and pay all filing fees, and any additional costs accrued with the advancement of this Complaint.

(3) Defendants to contact Pastor Everett Ramsey and purchase, and provide the five books that were unlawfully rejected by Defendant #4 Lynn Ollis.

(4) Defendants contact publisher & author Lawrence Blanchard, and purchase and provide Plaintiff a new copy of Vol. 2 of the Covenant Heritage Series.

(5) That Defendant #1 Frank L. Perry be officially reprimanded and demoted with reduction in pay.

(6) That Defendant #2 Mike Slagle be officially reprimanded, demoted, with a reduction in pay. This demotion shall exist for a period of five years.

(7) Defendant #3 Carol Buchannan be officially reprimanded, demoted with reduction in pay. This demotion shall exist for a period of five years.

(8) Defendant #4, Lynn Ollis' employment with the N.C. Dept. of Public Safety be immediately terminated with prejudice, including forfeiture of all benefits.

(9) Defendant #5 Corrections Officer Grear be officially reprimanded, demoted, and permanently reassigned away from inmate housing units. Said

reassignment shall not be promotional nor an advancement.

(10) Defendant #5 Corrections Officer Grear be charged with misdemeanor larceny.
…

(12) Defendant #1 Frank Perry to issue an order to all prisons wherein Plaintiff is currently housed, or will be housed in the future requiring prison staff to immediately cease and desist all actions aimed at disrupting Plaintiff's mail.

(B) This order shall also prohibit prison staff from harassing Plaintiff, in any way.

(C) This order shall also prohibit prison staff from transferring Plaintiff to any and-or all undesirable housing units.

(D) This order shall require all prison staff to accommodate Plaintiff's legal mail, files, and books … in accordance with DPS policy.

(Doc. No. 1 at 115).

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of

Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

**(1) Parties**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served).

Claims against individuals not listed as defendants in the Complaint's caption are therefore dismissed.

**(2)     First Amendment**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Procunier v. Martinez, 416 U.S. 396, 412 (1974), *limited by* Thornburgh v. Abbott, 490 U.S. 401 (1989); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 129 (1977)).

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). For government conduct to survive scrutiny under the Establishment Clause, "(1) it must

have a secular purpose; (2) its principal or primary effect must neither advance nor inhibit religion; and (3) it must not foster an excessive government entanglement with religion." Buxton v. Kurtinitis, 862 F.3d 423, 432 (4th Cir. 2017) (citing Lemon v. Kurtzman, 403 U.S. 602, 612–13 (1971)); see also Madison v. Riter, 355 F.3d 310, 316 (4th Cir. 2003). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider: (1) whether there is a valid, rational connection between the action and the stated legitimate government interest; (2) whether there are alternative means of exercising the right; (3) whether accommodating the right will have an adverse impact on guards, other inmates, and prison resources generally; and (4) the absence of ready alternatives). Substantial deference is accorded to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them. Turner, 482 U.S. at 89-91; Overton v. Bazzetta, 539 U.S. 126, 132 (2003). The burden is not on the State to prove the validity of prison regulations, but on the prisoner to disprove it. Id. Any regulation of speech must not be any more encompassing than necessary to further the penological interested involved. See Montcalm Publishing Corp. v. Beck, 80 F.3d 105, 108 (4th Cir. 1996) (citing Martinez, 416 U.S. at 424).

First, Plaintiff alleges that Defendant Buchannan thwarted his attempt to enroll in the Messianic Faith Group to begin a weekly educational class. He claims that Defendant Buchannan told him that the Faith Helper he had recruited was unavailable, which was untrue, and that a new

DPS policy prohibited outside religious groups from donating religious DVDs to the prison and that inmates were prohibited from attending religious services for six months after their enrollment.

This claim is facially insufficient to state a First Amendment violation. Plaintiff has not adequately alleged that he has a sincere religious belief. Further, he has failed to adequately allege that Defendant Buchannan's alleged actions substantially burdened, rather than merely inconvenienced, Plaintiff's exercise of his religion. Plaintiff's conclusory allegations that he was thwarted from forming a religious group fails to demonstrate that this substantially burdened his religious rights, or that he lacked alternate means to practice his sincere religious beliefs. See generally Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); see, *e.g.*, In re Long Term Admin. Seg. of Inmates Designated as Five Percenters, 174 F.3d 464, 470 (4th Cir. 1999) (application of security threat group did not deprive inmates of religious freedom because, *inter alia*, they had other available avenues to exercise their religion while in segregation including the ability to pray, fast, and study religious materials); Scott v. Ozmint, 467 F.Supp.2d 564 (D.S.C. 2006) (affirming summary judgment for defendants because their refusal to recognize prisoner's religion of Neterianism, which meant he could not hold group meetings, failed to state a First Amendment claim).

Plaintiff alleges that Defendant Ollis violated the First Amendment by stopping his mail including books from unauthorized sources and religious/political correspondences, and that Defendant Grear violated the First Amendment by confiscating a book Plaintiff had loaned to another inmate as Aryan Brotherhood contraband. Plaintiff baldly asserts that the confiscation of

property as contraband and the return of political/religious mail was "unjustified" under DPS policy.

Plaintiff's conclusory allegations are insufficient to set forth a First Amendment violation. Prison officials have broad discretion to determine that materials inside a prison are contraband. See generally Sandin v. Connor, 515 U.S. 472, 485 (1995) ("Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."). He fails to allege that there was no rational connection between the confiscation or return of his material, and a legitimate governmental interest, or that he lacked an alternative means of expressing himself. Therefore, he fails to state a free speech violation. See e.g., Birdo v. Dunston, 2013 WL 2154819 (W.D.N.C. May 17, 2013) (dismissing prisoner's § 1983 claim because he failed to state a First Amendment violation with regards to white supremacist speech; he was free to engage in expression regarding political matters and beliefs so long as his speech did not contain threatening or inflammatory communications); Hughes v. City of Mariposa, 2011 WL 5118448 (E.D. Ca. Oct. 27, 2011) (dismissing prisoner's First Amendment claim that a jailer took a periodical away from him because he failed to allege there was no rational connection between the jail's policy and a legitimate governmental interest, or that he did not have any other means of exercising his right).

To the extent that Plaintiff asserts that these actions violated his freedom of religion, this claim also fails because, as previously discussed, he has not adequately alleged a sincerely held religious belief, or a substantial burden, rather than a merely inconvenience, to his ability to pratice his religion.

Plaintiff has failed to adequately allege that he has a sincerely held religious belief that Defendants substantially burdened, or the prison's policy of confiscating inflammatory material

was not rationally connected to a legitimate safety interest, or that he lacked alternative means of expressing himself. Therefore, Plaintiff's First Amendment claims are insufficient to proceed.

**(3)** **RLUIPA**

RLUIPA provides, in part, that no government shall impose a "substantial burden" on the religious exercise of a person residing in or confined to an institution, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005). A plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

Once the inmate makes a *prima facie* showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Smith, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v.

12

Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190). Claims brought under RLUIPA are subject to a more demanding standard than claims under the First Amendment, that is, "strict scrutiny instead of reasonableness." See Lovelace, 472 F.3d at 187, 199 n.8 187 (Supreme Court jurisprudence interpreting the Free Exercise Clause provides guidance on what constitutes a substantial burden on religious exercise).

For the same reasons set forth in Section III(1), *supra*, Plaintiff has failed to state that the Defendants substantially burdened, rather than merely inconvenienced, his religious exercise by restricting his access to prohibited material and adhering to DPS policy with regards to the formation of a religious meeting group. See Krieger v. Brown, 496 Fed. Appx. 322, 325 (4th Cir. 2012) (no substantial burden occurred where an inmate failed to "show that the deprivation of an outdoor worship circle and the requested sacred items modified his behavior and violated his religious beliefs" because he failed to offer any explanation why an indoor worship would compromise his religious beliefs and he did not explain why the absence of certain items had an impact on religious rituals and violated his beliefs); Living Water Church of God v. Charter Twp. of Meridian, 258 Fed. Appx. 729, 739 (6th Cir. 2007) (no substantial burden occurs where government action merely makes the "religious exercise more expensive or difficult," but fails to

13

pressure the adherent to violate his religious beliefs or abandon one of the precepts of his religion).

Therefore, Plaintiff's RLUIPA claims are dismissed.

**(4)** **Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). The Parratt-Hudson doctrine is limited to cases involving "a random and unauthorized act by a state employee, . . . not a result of some established state procedure." Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982). When the challenge is to an "established state procedure," or when the deprivation is inflicted by a state official who is empowered to work deprivations and provide process where it is predictable when those deprivations might occur, the availability of a post-deprivation judicial hearing normally does not satisfy procedural due process. Id.; Zinermon v. Burch, 494 U.S. 113 (1990). The Parratt-Hudson doctrine does not apply when a municipal officer acts pursuant to a municipal policy or custom. Woodard v. Andrus, 419 F.3d 348 (5th Cir. 2005); Matthias v. Bingley, 906 F.2d 1047 (5th Cir. 1990).

To the extent that Plaintiff suggests that his material was returned and/or confiscated contrary to DPS policy, he has a remedy for conversion under North Carolina law. See Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975) (an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act pursuant to North Carolina law). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat.

14

§ 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner). A violation of prison policy is considered to be a random and unauthorized act for purposes of a due process analysis. See generally Myers v. Klevenhagen, 97 F.3d 91 (5th Cir. 1996) (prisoner's claim that the sheriff debited his inmate trust account for medical services without first conducting an indigency hearing, in violation of county policy, alleged random and unauthorized conduct so Parrat-Hudson doctrine applied). Because an adequate post-deprivation remedy is available under North Carolina law, Plaintiff has failed to state a cognizable procedural due process claim.

Therefore, Plaintiff's due process claim is insufficient to proceed.

**(5)** **Equal Protection**

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The equal protection requirement "does not take from the States all power of classification," Personnel Adm'r v. Feeney, 442 U.S. 256, 271 (1979), but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). To succeed on an equal protection claim, a § 1983 plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If he makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained "if there is a rational relationship between the disparity of treatment and some legitimate

15

governmental purpose." Heller v. Doe, 509 U.S. 312, 319–320 (1993).

The Fourth Circuit does not recognize prisoners as "a suspect class." Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997). When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. See Morrison, 239 F.3d at 654–55. In a prison context, therefore, the court must determine whether the disparate treatment is "reasonably related to [any] legitimate penological interests." Shaw v. Murphy, 532 U.S. 223, 225 (2001). This deferential standard applies "even when the alleged infringed constitutional right would otherwise warrant higher scrutiny;" however, this more deferential review does not ignore the concerns that justify application of a heightened standard outside of the prison context. Morrison, 239 F.3d at 655-56.

Plaintiff alleges that the arbitrary rejection and procedural "rubber-stamping" of the rejection of his mail was motivated by Defendant Ollis' personal desire to punish Plaintiff because of his race and religious beliefs. These bald allegations are insufficient to state an equal protection claim because Plaintiff fails to allege that he was treated differently from similarly situated individuals as a result of intentional discrimination.

Therefore, Plaintiff's equal protection claim is dismissed.

**(6)** **Relief**

A prisoner's transfer moots a § 1983 request for declaratory and injunctive relief when the conditions of which the prisoner claims are unlikely to recur. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986). Plaintiff's claims for injunctive relief with regard to his property, the handling of his mail, and his formation of a religious group meeting, are moot because Plaintiff no longer resides at Mountain View C.I. where

16

the alleged incidents occurred, and he has failed to allege the existence of any conditions indicating likely recurrence.

Moreover, Plaintiff asks the Court to order the discipline of DPS personnel, the institution of criminal prosecution, and Plaintiff's placement in desirable prison housing, all of which are unavailable in this § 1983 civil rights action. See generally Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("in American jurisprudence …, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); Harris v. Salley, 339 Fed. Appx. 281 (4th Cir. 2009) (prisoner lacked equal protection right to have criminal proceedings instituted against § 1983 defendants); Sandin v. Conner, 515 U.S. 472 (1995) (a change in the conditions of a prisoner's confinement that does not exceed the scope of the original sentence only gives rise to a federally protected liberty interest if it imposes atypical and significant hardship in relation to the ordinary incidents of prison life); Van Houten v. Gaskill, 2006 WL 749410 (D.Kan. March 22, 2006) ("whether to fire or demote an employee is a personnel issue beyond the jurisdiction" of the district court). These claims for relief are frivolous and are not cognizable in a § 1983 action.

## IV.    CONCLUSION

For the reasons stated herein, the Complaint is deficient and subject to dismissal. Plaintiff shall have fourteen (14) days in which to file an Amended Complaint in which he may attempt to cure these deficiencies and state a facially sufficient claim for relief. Plaintiff is reminded that, despite his *pro se* status, he must comply with all applicable procedures and rules including the Federal Rules of Civil Procedure and the Court's Local Rules. His attention is particularly drawn to Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires a "short and plain" statement of the claim. Any Amended Complaint will supersede the original Complaint and therefore any Defendants or claims not contained in the Amended Complaint will be waived.

Plaintiff's failure to timely file an Amended Complaint that complies with this Order will result in this case being dismissed and closed without prejudice and without further notice to Plaintiff.

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint, (Doc. No. 1), is **DISMISSED** as facially insufficient and frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

2. Plaintiff shall have fourteen (14) days in which to file an Amended Complaint in accordance with this order and all applicable rules and procedures. If Plaintiff fails to file an Amend Complaint in accordance with this Order, this action will be dismissed and closed without prejudice and without further notice to Plaintiff.

3. The Clerk is directed to mail a copy of a new Section 1983 complaint form to Plaintiff.

Signed: March 9, 2018

Frank D. Whitney
Chief United States District Judge