UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:16-cv-385-FDW

| | |
|---|---|
| JIMMY ALLEN ROBERTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FRANK L. PERRY, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint, (Doc. No. 16). He is proceeding *in forma pauperis*. See (Doc. No. 7). Also pending is Plaintiff's "Motion for Expansion of Time" for filing an amended complaint, (Doc. No. 15).

**I.     BACKGROUND**

*Pro se* Plaintiff Jimmy Allen Roberts, who currently resides at the Craggy Correctional Center in Asheville, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The original Complaint was dismissed on initial review and Plaintiff was granted the opportunity to amend. See (Doc. No. 14). Plaintiff's motion for an extension of time to file the Amended Complaint, (Doc. No. 15), is denied as moot. Plaintiff names as Defendants in the Amended Complaint Secretary of Prisons Eric Hooks (formerly Frank L. Perry), and the following employees of Mountain View C.I.: Administrator Mike Slagle, Mailroom Supervisor Lynn Ollis, and Correction Officer Grear.

Construing the Amended Complaint liberally and accepting the allegations as true, five religious books arrived for Plaintiff at Mountain View C.I. on June 24, 2016. They were authored by Pastor Everett Ramsey of Faith Baptist Church, and they were published by James Nelson

1

Publishers and/or Pastor Ramsey and satisfied the DPS definition of "published." Defendant Ollis rejected the publications because they did not come from a legitimate publisher or marketer and Plaintiff appealed. On June 26, 2016, Plaintiff sent Defendant Slagle a request form informing him of Ollis' actions but he failed to respond or take any remedial action, which shows deliberate indifference. On July 12, 2016, Plaintiff sent a letter to Perry notifying him of Ollis' actions and he failed to respond or take any remedial action, which shows deliberate indifference. On July 21, 2016, Plaintiff filed a grievance and received an unsatisfactory response and he appealed through step-3, which was denied.

On August 15, 2016, Correctional Officer Grear confiscated Volume 2 of Lawrence Buchard's "The Covenant Heritage Series" from Inmate Eddie Money. Plaintiff informed Defendant Grear that he had loaned the book to Inmate Money as authorized by DPS policy. However, Grear said the book was Aryan Brotherhood material and therefore contraband. The book is religious regarding his ancestral religious practice and does not contain any gang-related subject-matter. Confiscation was the sole product of Grear's hatred of Plaintiff because of his race and ancestral religion and tries to use the security policies to punish Plaintiff. Plaintiff had received the book while at Avery C.I through proper mailroom screening. It was also inspected upon his arrival at Mountain View C.I., and he had it for over a year at Mountain View C.I. where it was inspected repeatedly without incident. Plaintiff was allowed to receive Volumes 4 and 5 of the book. Plaintiff filed a grievance September 7, 2016, received an unsatisfactory response, and appealed through step-3 which was denied.

Plaintiff's incoming correspondences with Ed Sommerville suddenly stopped while Plaintiff was housed at Mountain View C.I., without notice. Plaintiff came to suspect that Defendant Ollis was responsible. This suspicion was confirmed on June 6, 2016, when Plaintiff

2

found out that Sommerville's correspondences had been returned to him by mailroom staff. On July 11, 2016, Plaintiff wrote to Ollis on a request form and asked her to explain why the religious and political articles had been returned without notice or due process procedures, which are mandatory. On July 13, 2016, Defendant Ollis rubber stamped the request, saying the mailings had been returned due to absence of prisoner number in the address, which is untrue. On July 15, 2016, Plaintiff wrote to Defendant Perry informing him of Defendant Ollis' abuses but he did not respond or take any remedial action, which shows deliberate indifference. On October 22, 2016, after Plaintiff was transferred to Craggy C.I., he received two letters from Sommerville informing another Mountain View C.I. inmate of his futile attempts to mail religious and political printouts to Plaintiff. Plaintiff filed another grievance on October 22, 2016, which was returned without processing as untimely.

Defendants Slagle and Ollis deprived Plaintiff of free speech and denied him access to the courts by disposing of Plaintiff's certiorari petition to the North Carolina Court of Appeals without his knowledge and against his will. This was done in retaliation for Plaintiff's filing of a civil complaint against Slagle in case number 1:16-cv-34-FDW, and as punishment for his racial and religious beliefs. The certiorari petition was addressed to the North Carolina Attorney General and sought relief in his criminal case. The petition was hand delivered to Correctional Officer Daniels on August 2, 2016. It was properly wrapped, postage prepaid, and addressed to the North Carolina Attorney General, who never received it. Because Defendant Ollis disposed of the sole copy of the certiorari petition, Plaintiff's efforts to challenge his conviction have been impeded and frustrated. If a copy of the petition were to materialize, it would be untimely. The petition contained meaningful claims regarding an unconstitutional guilty plea. Defendant Perry denied Plaintiff's right to access to the courts by intentionally neglecting to provide him access to a photocopier

which would have allowed him to file a successive copy of the certiorari petition. Carbon paper does not suffice. Irreplaceable documents were lost, constituting an actual injury. Defendant Slagle shows his culpability in a letter. Defendants cannot produce records showing indigent postage spent on mailing the certiorari petition or a record of outgoing mail, which is standard operating procedure. Plaintiff filed a grievance on December 9, 2016, which was denied as untimely. Plaintiff sent Defendant Slagle a letter requesting records showing that Ollis mailed the petition, which has not been answered. Plaintiff wrote to Legal Services requesting assistance on December 9, 2016, which was denied.

Plaintiff began studying Christian literature in 2001, received "Theophany" in 2004 which altered the course of his life, was invited to enroll in a "prototypical Seminary Extension Program" in 2007, and in 2009, received ordination from the Ministerial Seminary of America, adopted a "Christian identity," and began incorporating the "Hebrew Roots Movement" into his belief system, in May 2017 he was given the opportunity to prepare lesson plans and conduct weekly Sabbath services, and in 2018, he became the first officially designated "faith helper" in the Western District of North Carolina. (Doc. No. 16 at 14-16, 22). Yaweh grants his chosen people who make the study of scripture the primary focus of their daily lives. (Doc. No. 16 at 18). Plaintiff's ability to perform these "divinely assigned duties" is measured by the amount of "curricular information that he is allowed to access, research, and assimilate in the advancement of his own spiritual maturation…." (Doc. No. 16 at 18). When the sources of information diminish, the practice of his religion is diminished. The confiscated material does not advocate violence and no rational relationship between stopping incoming religious publications and a compelling government interest, which has substantially burdened his religious practice. (Doc. No. 16 at 20).

Plaintiff requests judicial notice of the absence of hate, violence, white supremacist,

4

racism, anti-Semitism, domestic terrorism, criminal activity from his beliefs, and that the Defendants' grievance responses are silent regarding a compelling government interest. (Doc. No. 16 at 17, 21).

Plaintiff asks that: Defendants pay all filing fees; Defendants contact Pastor Everett Ramsey and purchase and provide him with the 5 books rejected by Ollis; Defendants contact publisher and author Lawrence Blanchard and purchase and provide Plaintiff with Volume 2 of the Covenant Heritage series; Defendants return all publications belonging to Plaintiff; and"[a]ny and all punitive or remedial relief this court deems appropriate." (Doc. No. 16 at 29).

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the

5

pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

**(1) Parties**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Amended Complaint refers to individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999)

(granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served).

Claims against individuals not listed as defendants in the Amended Complaint's caption are therefore dismissed.

**(2)** **First Amendment**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Procunier v. Martinez, 416 U.S. 396, 412 (1974), *limited by* Thornburgh v. Abbott, 490 U.S. 401 (1989); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 129 (1977)).

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). For government conduct to survive scrutiny under the Establishment Clause, "(1) it must have a secular purpose; (2) its principal or primary effect must neither advance nor inhibit religion; and (3) it must not foster an excessive government entanglement with religion." Buxton v. Kurtinitis, 862 F.3d 423, 432 (4th Cir. 2017) (citing Lemon v. Kurtzman, 403 U.S. 602, 612–13

7

(1971)); see also Madison v. Riter, 355 F.3d 310, 316 (4th Cir. 2003). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider: (1) whether there is a valid, rational connection between the action and the stated legitimate government interest; (2) whether there are alternative means of exercising the right; (3) whether accommodating the right will have an adverse impact on guards, other inmates, and prison resources generally; and (4) the absence of ready alternatives). Substantial deference is accorded to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them. Turner, 482 U.S. at 89-91; Overton v. Bazzetta, 539 U.S. 126, 132 (2003). The burden is not on the State to prove the validity of prison regulations, but on the prisoner to disprove it. Id. Any regulation of speech must not be any more encompassing than necessary to further the penological interested involved. See Montcalm Publishing Corp. v. Beck, 80 F.3d 105, 108 (4th Cir. 1996) (citing Martinez, 416 U.S. at 424).

Plaintiff alleges that Defendant Ollis violated the First Amendment by stopping his mail including books from unauthorized sources and religious/political correspondences, and that Defendant Grear violated the First Amendment by confiscating a book Plaintiff had loaned to another inmate as Aryan Brotherhood contraband. He further alleges that Defendants Slagle and Perry knew about Ollis' actions via letters to which he never received a response or any relief. He has adequately alleged that he has a sincerely held religious belief, that the material does not

qualify for confiscation, that the material is necessary for his religious practice, and that the confiscation does not further a legitimate governmental interest. Therefore, he has sufficiently stated a First Amendment violation against Defendants Ollis, Grear, Slagle, and Perry. However, Plaintiff states no basis for supervisory liability against Defendant Hooks and, accordingly, the claim against him is dismissed. See generally Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).

Plaintiff's First Amendment claims will therefore proceed against Defendants **Ollis, Grear, Slagle**, and **Perry** and is dismissed as to Defendant Hooks.

 **(3)    RLUIPA**

RLUIPA provides, in part, that no government shall impose a "substantial burden" on the religious exercise of a person residing in or confined to an institution, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).  "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."  Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).  A plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion.  See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015).  The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009).  A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or one that forces a person to choose between

9

following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

Once the inmate makes a *prima facie* showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Smith, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190). Claims brought under RLUIPA are subject to a more demanding standard than claims under the First Amendment, that is, "strict scrutiny instead of reasonableness." See Lovelace, 472 F.3d at 187, 199 n.8 187 (Supreme Court jurisprudence interpreting the Free Exercise Clause provides guidance on what constitutes a substantial burden on religious exercise).

For the same reasons set forth in Section (3), *supra*, Plaintiff has adequately alleged that the Defendants Ollis, Grear, Slagle and Perry substantially burdened his religious exercise, but he failed to state a claim for supervisory liability as to Defendant Hooks.

Therefore, Plaintiff's RLUIPA claims are sufficient to proceed against Defendants **Ollis, Grear, Slagle**, and **Perry** and dismissed as to Defendant Hooks.

10

**(4)     Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). The Parratt-Hudson doctrine is limited to cases involving "a random and unauthorized act by a state employee, . . . not a result of some established state procedure." Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982). When the challenge is to an "established state procedure," or when the deprivation is inflicted by a state official who is empowered to work deprivations and provide process where it is predictable when those deprivations might occur, the availability of a post-deprivation judicial hearing normally does not satisfy procedural due process. Id.; Zinermon v. Burch, 494 U.S. 113 (1990). The Parratt-Hudson doctrine does not apply when a municipal officer acts pursuant to a municipal policy or custom. Woodard v. Andrus, 419 F.3d 348 (5th Cir. 2005); Matthias v. Bingley, 906 F.2d 1047 (5th Cir. 1990).

To the extent that Plaintiff suggests that his material was returned and/or confiscated contrary to DPS policy, he has a remedy for conversion under North Carolina law. See Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975) (an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act pursuant to North Carolina law). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner). A violation of

11

prison policy is considered to be a random and unauthorized act for purposes of a due process analysis. See generally Myers v. Klevenhagen, 97 F.3d 91 (5th Cir. 1996) (prisoner's claim that the sheriff debited his inmate trust account for medical services without first conducting an indigency hearing, in violation of county policy, alleged random and unauthorized conduct so Parrat-Hudson doctrine applied). Because an adequate post-deprivation remedy is available under North Carolina law, Plaintiff has failed to state a cognizable procedural due process claim.

Therefore, Plaintiff's due process claim is insufficient to proceed.

**(5)** **Access to Courts**

Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). To make out a *prima facie* case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

Plaintiff contends that Defendants Slagle and Ollis failed to mail his certiorari petition in retaliation for a civil suit against Slagle and to punish him for his religious and racial beliefs, and that Defendant Perry failed to provide him with access to a photocopy machine. This claim fails

12

because Plaintiff alleges that the certiorari petition at issue was addressed to the North Carolina Attorney General, not the North Carolina courts. Because the certiorari petition was addressed to the Attorney General rather than a North Carolina court, he fails to show that Defendants' alleged actions, even if true, prejudiced a North Carolina criminal proceeding in any way. Moreover, he fails to explain how his alleged lack of access to a photocopy machine frustrated a non-frivolous claim in a post-conviction or civil rights proceeding.

Therefore, Plaintiff's claim that Defendants impeded his access to the courts is dismissed for failure to state a claim.

**(6)** **Relief**

A prisoner's transfer moots a § 1983 request for declaratory and injunctive relief when the conditions of which the prisoner claims are unlikely to recur. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986). Plaintiff's claims for injunctive relief with regard to his property are moot because Plaintiff no longer resides at Mountain View C.I. where the alleged incidents occurred, and he has failed to allege the existence of any conditions indicating likely recurrence. Moreover, his request for the confiscated books should be addressed in a conversion action as set forth in Section (4), *supra*.

Plaintiff does not seek damages. However, he does request "any and all punitive or remedial relief this court deems appropriate." (Doc. No. 16 at 29). This is liberally construed as a request for nominal damages which will be permitted to proceed. See, e.g., Bryan v. Capers, 2007 WL 2116452 (D.S.C. July 19, 2007) (liberally construing claim for "[a]ny additional relief this Court deems just, proper, and equitable" as a claim for nominal damages), *aff'd by* 252 Fed. Appx. 546 (4th Cir. 2007).

13

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's First Amendment and RLUIPA claims will be permitted to proceed against Defendants Ollis, Grear, Slagle, and Perry for nominal damages. Defendant Hooks will be dismissed from this action as will Plaintiff's remaining claims.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's First Amendment and RLUIPA claims survive initial review under 28 U.S.C. § 1915(e) for nominal damages against Defendants **Ollis, Grear, Slagle**, and **Perry**.

2. The remaining claims including those asserted against Defendant Hooks are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

3. The Clerk of Court is instructed to terminate Eric Hooks as a Defendant and reinstate Frank L. Perry as a Defendant in the Court's electronic records.

4. Plaintiff's "Motion for Expansion," (Doc. No. 15), is **DENIED** as moot.

5. **IT IS FURTHER ORDERED THAT** the Clerk is directed to mail summons forms to Plaintiff for Plaintiff to fill out and return for service of process on Defendants **Ollis, Grear, Slagle**, and **Perry**. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is respectfully instructed to note on the docket when the forms have been mailed to Plaintiff.

Signed: April 4, 2018

Frank D. Whitney
Chief United States District Judge